### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
SYED A. BABAR,                :
                              :
        Petitioner,           :
                              :
     v.                       :   Civ. No.  3:13-CV-01095(AWT)
                              :
UNITED STATES OF AMERICA,     :
                              :
        Respondent.           :
                              :
------------------------------x
```

### RULING ON MOTION TO
### VACATE, SET ASIDE OR CORRECT SENTENCE

Petitioner Syed A. Babar ("Babar"), proceeding pro se, filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence.  He makes two claims:  (1) that his attorney's advice to reject an initial plea agreement constituted constitutionally ineffective assistance of counsel, and (2) that Alleyne v. United States, 133 S. Ct. 2151 (2013), rendered his plea invalid.  The court concluded that a hearing was necessary and appointed counsel for Babar.  For the reasons set forth below, the motion is being denied after that hearing.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

From 2006 to 2010, Babar was the ring leader of a mortgage fraud ring that obtained millions of dollars in residential real estate loans through the use of sham sales contracts, false loan

applications and fraudulent property appraisals.  The scheme involved nearly 30 properties in Connecticut, most of which ended up in foreclosure.  Babar's conduct, and that of his co-defendants, resulted in a loss of over $4 million to various private lenders and to the Federal Housing Administration, which insured many of the loans that were fraudulently obtained.

Babar was charged in a Second Superseding Indictment on July 29, 2010. He had been arrested on the initial Indictment on May 10, 2010. Jury selection was scheduled for March 14, 2011.  On February 1, 2011, Babar changed his plea to guilty on all fourteen counts charged against him in the Second Superseding Indictment.

Babar argued in his sentencing memorandum that the recommended sentencing guidelines range of 108 to 135 months in the Presentence Report was "harsher than the sentences received by all the other co-defendants" and created a "sentencing disparity" with "co-defendants who had significant roles during the conspiracy."  Def.'s Sentencing Mem. at 31.  Babar also argued in his sentencing memorandum that a downward departure was necessary to mitigate the allegedly cumulative effects of overlapping sentencing enhancements pursuant to United States v. Lauersen, 348 F.3d 329 (2d Cir. 2003), and United States v. Jackson, 346 F.3d 22 (2d Cir. 2003).

The court sentenced Babar to 120 months of imprisonment. He appealed his sentence. U.S. v. Babar, 512 Fed.Appx. 78 (2 Cir. 2013).  In his appeal, Babar made five arguments.  First, Babar argued that the leadership role enhancement imposed at his sentencing was not supported by sufficient factual findings. Second, Babar claimed that his sentence was grossly disproportionate to the lesser sentences received by his co-defendants.  Third, he contended that the district court should have given him an additional one-point reduction for his acceptance of responsibility.  Fourth, he argued that he should have received a downward departure for overlapping sentencing enhancements.  Finally, he maintained that his sentence was substantively unreasonable.  The Second Circuit found all of Babar's arguments unpersuasive and upheld the sentence.

## II.  LEGAL STANDARD

Federal prisoners can challenge a criminal sentence pursuant to 28 U.S.C. § 2255 "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice."  Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal citation and quotation marks omitted).  A petitioner may obtain review of his claims if he has raised them at trial or on direct appeal; if not, such a procedural default can be overcome by a showing of

3

"cause" and "prejudice", <u>Ciak v. United States</u>, 59 F.3d 296, 302 (2d Cir. 1995) <u>abrogated on other grounds by</u> <u>Mickens v. Taylor</u>, 535 U.S. 162 (2002) (quoting <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977)), or a showing of constitutionally ineffective assistance of counsel, <u>see</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 487-88 (1986); <u>Johnson v. United States</u>, 313 F.3d 815, 817 (2d Cir. 2002).

To prevail on an ineffective assistance of counsel claim, the petitioner must show that his "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984).  "The court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" <u>United States v. Aguirre</u>, 912 F.2d 555, 560 (2d Cir. 1990) (quoting <u>Strickland</u>, 466 U.S. at 689).  Courts should not second-guess the decisions made by defense counsel on tactical and strategic matters.  <u>See</u> <u>United States v. Luciano</u>, 158 F.3d 655, 660 (2d Cir. 1998).  "The court's central concern is not with 'grad[ing]

4

counsel's performance,' but with discerning 'whether, despite
the strong presumption of reliability, the result of the
particular proceeding is unreliable because of a breakdown in
the adversarial process that our system counts on to produce
just results.'" Aguirre, 912 F.2d at 561 (quoting Strickland,
466 U.S. at 696-67) (internal citations omitted)).

### III. DISCUSSION

#### A. Ineffective Assistance of Counsel

In Ground One Babar alleges that

> Counsel rendered ineffective assistance when he advised
> Babar to reject the government's plea offer and later
> advised him to plead guilty in open Court to the 14 Counts
> in the indictment which resulted in a longer sentence.

Sec. 2255 Mot., Mem. in Supp., Doc. No. 1-2, at 2 ("Doc. No. 1-
2"). Babar also alleges that he would have accepted the initial
plea agreement had he been advised properly.

In his post-hearing brief, Babar argues that (1) his
counsel, Attorney Hasse ("Hasse"), was ineffective when he
advised Babar to reject a plea agreement offered by the
government; (2) in the alternative, his counsel was ineffective
because he provided no advice on whether Babar should accept the
government's offer; (3) his counsel was ineffective by allowing
him to lose the benefit of the third point for acceptance of
responsibility; and (4) his counsel was ineffective because he
failed to move for a third point for acceptance of

responsibility.  The court finds each of these arguments unpersuasive.

Babar was offered three plea agreements before ultimately pleading guilty without a plea agreement.  The October 7, 2010 plea agreement contained a stipulation that the petitioner's advisory Sentencing Guidelines range was 97-121 months of imprisonment, based on a Total Offense Level of 30.  In arriving at that calculation, the parties included a three-level decrease for acceptance of responsibility under Guidelines § 3E1.1.  The agreement also included a stipulation of offense conduct, and a waiver of Babar's right to appeal or collaterally attack his sentence if his sentence did not exceed 121 months of imprisonment.

On December 3, 2010, government counsel advised Babar's counsel that the October 7, 2010 plea agreement would expire on December 17, 2010.  The government advised Hasse that, if Babar went to trial, it would make a substantial difference in the way the government would have to prepare for trial, and that this deadline was necessary in order to give the government an appropriate amount of time to prepare.  Government counsel stated that this deadline gave the government the minimum time required.

On December 11, 2010, Hasse visited Babar to discuss that deadline.  Hasse later requested an extension, and eventually

6

government counsel agreed to extend the deadline for accepting the first plea agreement to January 10, 2011.

When the October 7, 2010 agreement was not accepted by January 10, 2011, counsel for the government sent the first of two plea agreements dated January 11, 2011.  This revised plea agreement also contained a stipulation of offense conduct.  It stated that the parties had no agreement as to whether Babar qualified for acceptance of responsibility under § 3E1.1.  It contained a waiver of right to appeal or collaterally attack the sentence if the sentence did not exceed 168 months of imprisonment, a five-year term of supervised release and a $175,000 fine.  Later that day, government counsel sent Hasse a slightly revised plea agreement which had the same provisions with respect to acceptance of responsibility and the appellate waiver.

On February 1, 2011 Babar pled guilty to all counts in the Second Superseding Indictment, without any plea agreement.  At the plea hearing, Babar indicated that his mind was clear and that he understood everything that was occurring in court.  See T.2/1/11 at 8.  He advised the court that he had read and discussed with his attorney the memorandum filed by the government in connection with his plea.  See T.2/1/11 at 10-11. Babar was asked whether he was "satisfied" to have Hasse represent him.  T.2/1/11 at 10.  Babar answered "yes."  Id.

Subsequently, when Hasse noted that "There wasn't an appeal
waiver," Babar interjected, "That's why I choose to do open
plea".  T.2/1/11 at 17.

An attorney "must give the client *the benefit of counsel's
professional advice* [on whether to plead]", but "the decision
must ultimately be left to the client's wishes.  Boria v. Keane,
99 F.3d 492, 497 (2d. Cir. 1996).

In his affidavit, Babar states with respect to the October
7, 2010 plea agreement that "I was prepared to accept the plea
offer but Hasse advised me to reject it stating, "it doesn't
allow [him] to object to the enhancement."  Babar Aff., Doc. No.
1-1, at 1.  During the evidentiary hearing Hasse testified about
his discussions with his client concerning this plea agreement:

> Q. So you in fact advised Mr. Babar to reject this
> plea agreement, did you not?
>
> A. No.
>
> Q. You advise[d] him to accept this plea agreement?
>
> A. I don't advise anybody to accept or reject a plea
> agreement. What I do is I explain to them the terms of
> it. The ultimate decision is the Court's. This is a
> recommendation made between the government and defense
> counsel for the Court to consider in imposing sentence.
> A whole lot of other things come into play. With
> Mr. Babar a whole lot of things came into play as well.
> And he went through the plea agreement. He would never
> agree with all –
>
> Q. Just so we're clear, you don't advise your clients
> whether to plead guilty or not?
>
> A. That's an ultimate decision that's up to the

client.

Q. But you don't give them advice about whether to enter into a plea agreement with the government or not?

A. I give them the benefits and drawbacks of whatever decision they make. I also share with them some background that I have with the Sentencing Guidelines, with the sentencing judge and other things that come into play when you have to make an important decision like that.

5/16/2016 Evidentiary Hr'g Tr. page 23, line 9 to page 24, line 8.  The court finds this testimony credible, and it reflects that Babar's counsel did not give ineffective assistance.  The petitioner made a zealous effort to persuade the court that his former counsel was not credible but fell well short of persuading the court that this was so.

Babar suggests that Hasse advised him to reject the proposed plea agreements because he was interested in extending the negotiations in order to increase his attorney's fees.  He points to deficiencies in Hasse's recordkeeping and billing practices and how high the fee ultimately was.  With respect to Hasse's visits to his client at Wyatt Detention Center, he points to discrepancies between Hasse's billing records and the visitor log at Wyatt (failing to acknowledge that the Wyatt records indicate Hasse visited Babar at the detention center on more occasions than he actually billed for).  Babar argues that Hasse was evasive when responding to questions from Babar's new attorney, but that was not the conclusion the court reached.

Rather, the court concludes that, after reviewing the plea agreements with his counsel, Babar rejected each one because Babar had objections, and that the decision to reject each plea agreement was one Babar made knowingly and voluntarily.  Babar's comments during the plea hearing (i.e., when he interjected that the reason he was choosing to do an open plea was because there was not an appellate waiver) reflect not only that particular provisions were important to him, but also how actively involved he was.  No one had put a question to Babar at the time he made that statement.  He simply interjected.

The defendant's second argument is that, in the alternative, Hasse was ineffective by not providing any advice to Babar as to whether he should accept the government's plea offer.  This alternative argument fails because it is based on a false premise.  The petitioner argues that Hasse testified that he provided no advice on the plea agreement.  That is not so.  Rather his testimony is as set forth above.

The petitioner's third argument is that his counsel was ineffective by allowing him to lose the benefit of the third point for acceptance of responsibility under Guidelines § 3E1.1(b).  Babar argues that his counsel could have preserved his right to the third point by conveying to the government prior to the expiration of the deadline set by the government that Babar remained willing to plead guilty, without a plea

agreement if necessary.  He emphasizes the language in § 3E1.1 which reads: "by timely notifying authorities of intention to enter a plea of guilty".  U.S.S.G § 3E1.1.  But he does not adequately take into account the additional qualifying phrase: "thereby permitting the government to avoid preparing for trial . . ." Id.  Thus, as is also discussed below with respect Babar's fourth argument, a defendant cannot simply notify the government that he or she wishes to plead guilty and thereby reserve a third point while still causing the government to prepare for trial.

The petitioner's fourth argument is that his former counsel was ineffective because, at sentencing, he failed to move for a third point for acceptance of responsibility.  "The plain language of § 3E1.1(b) refers only to the prosecution resources saved when the defendant's timely guilty plea 'permit[s] the government to avoid preparing *for trial*.'" United States v. Lee, 653 F.3d 170, 174 (2d Cir. 2011) (citing U.S.S.G § 3E1.1(b)) (emphasis in original).  "[T]he Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial".  U.S.S.G § 3E1.1 cmt. n.6.

The petitioner argues that the government was put on notice that he intended to plead guilty before it was necessary for the government to begin preparing for trial and that the government

"did not receive any contrary indication before it determined
not to move for the third point."  Pet'r's Post-Hr'g Br. ("Doc.
No. 29") at 42-43.  The petitioner also contends that the
government knew he intended to plead guilty no later than
December 17, 2010.  He states:

> In its sentencing memorandum, it disingenuously wrote: "The
> government had to prepare for a lengthy trial against Babar
> long before he decided to plead guilty on February 1, 2011.
> He did not timely notify the government of his intention to
> enter a guilty plea, and as a result he did not permit the
> government to avoid preparing for his trial and permit it
> [to] save resources in avoiding such preparation."

Doc. No. 29 at 18-19 (citing United States v. Babar,
3:10cr93(AWT), Doc. No. 694: Gov't Sentencing Mem. at 18).

However, this was a multi-defendant case where Babar was
the central figure in the mortgage fraud ring, and it is clear
to the court, based on presiding over the trial, that the
government had no choice but to continue to prepare for trial as
if Babar was going to be part of the trial until such time as he
had entered a guilty plea.  In fact, at sentencing the court
observed that it would have been a "much more difficult trial"
had Babar gone to trial.  T.11/28/11 at 30.  There would have
simply not been sufficient time to do the necessary preparation
if the government had relied on an indication that Babar would
plead guilty but he chose not to do so.

As the government notes in its post-hearing brief, it had a
legitimate concern whether Babar would actually plead guilty.

12

Moreover, the court agrees that "[t]he intent of the third point
. . . . is not to allow a defendant to say that they intend to
plead guilty, stall until the Government has prepared for the
trial, and then claim their third point.  The Petitioner's
argument would nullify the third point provision from the
guidelines, allowing a defendant to reserve a third point early
in negotiations, while still causing the Government to prepare
for trial."  Gov't's Resp., Doc. No. 30, at 6.

    For these reasons, the court concludes that Babar did not
receive ineffective assistance of counsel.

       **B. <u>Alleyne</u>**

    In Ground Two Babar asserts that

> [t]he Supreme Court's decision in <u>Alleyne v. United States</u>,
> No. 11-9335, June 17, 2013 requiring an indictment to define
> the facts that increase the floor of the punishment affixed to
> the statute, renders Counts 1, 2-9 and Count 10 absent of the
> actual notice requirement and in violation of the due process
> clause of the Fifth Amendment and the notice and jury trial
> guarantees of the Sixth Amendment, rendering his plea not
> knowing and voluntary.

Doc. No. 1-2 at 9.

    Babar takes as his starting point the fact that he was
convicted under statutes which provide that persons who commit
such offenses shall be fined and/or imprisoned.  <u>See</u> 18 U.S.C. §
371 (Count One: a fine and/or up to 5 years for conspiracy), 18
U.S.C. § 1343 (Counts Two through Nine: a fine and/or up to 10
years per count for wire fraud), and 18 U.S.C. § 1341 (Count
Ten: a fine and/or up to 20 years for mail fraud).  He then

asserts that the "minimum mandatory penalty" for each offense is therefore a fine.  Consequently, he argues, the indictment must define and a jury find facts that increase his punishment to more than what he calls the "minimum mandatory penalty", which is a fine.  Babar states that "what the indictment does not list are the facts (i.e. monetary amounts) that would aggravate the minimum penalty from a fine to imprisonment."  Doc. No. 1-2 at 14. He concludes that "[w]ith <u>Alleyne</u> now requiring the facts that aggravate the minimum punishment to be put into the indictment, Babar's indictment suffers a Fifth Amendment and Sixth Amendment infirmity of failing to provide actual notice and non-compliance with the due process clause."  Doc. No. 1-2 at 16.

In <u>Alleyne v. United States</u>, 133 S. Ct. 2151 (2013), the Supreme Court held that the constitutional rule announced in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), applies to facts that increase the mandatory minimum punishment for a crime, and that under <u>Apprendi</u>, any fact (other than the fact of a prior conviction) that increases a mandatory minimum sentence "is an 'element' that must be submitted to the jury and found beyond a reasonable doubt."  133 S. Ct. at 2155.  The Court explained that "the essential Sixth Amendment inquiry is whether a fact is an element of the crime," and that "[w]hen a finding of fact alters the legally prescribed punishment so as to aggravate it,

14

the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." Id. at 2162. Because a fact that increases the minimum "aggravates the legally prescribed range of allowable sentences," the Court held, "it constitutes an element of a separate, aggravated offense that must be found by the jury." Id. The Court noted, however, that its ruling did not "mean that any fact that influences judicial discretion must be found by a jury," and that it had "long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." Id. at 2163. The Court of Appeals has held, post-Alleyne, that sentencing judges may continue to apply the Guidelines based on facts found by a preponderance of the evidence. See United States v. Figueroa, 530 Fed. Appx. 40, 41 (2d Cir. 2013).

In Babar's case, however, the statutes under which he was convicted prescribe no mandatory minimum sentences, as contemplated by Alleyne, only statutory maximums. The loss amounts in his case affected the advisory range under the Sentencing Guidelines, but they did not affect his minimum sentence. His case is unlike Alleyne, where the defendant was convicted and the sentencing judge made judicial findings that increased the mandatory minimum sentence from five years to seven years. It was under those circumstances that the Supreme Court held that such a finding was an element of the crime that

15

must be found by a jury.  Thus <u>Alleyne</u> is inapposite, and Ground Two must be dismissed because it lacks merit as a matter of law.

## IV.  CONCLUSION

For the reasons set forth above, the motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) is hereby DENIED.  The court will not issue a certificate of appealability because Babar has not made a substantial showing of the denial of a constitutional right.  <u>See</u> 28 U.S.C. § 2253(c)(2).

The Clerk shall close this case.

It is so ordered.

Signed this 31st day of March, 2017 at Hartford, Connecticut.

<u>       /s/AWT       </u><br>
Alvin W. Thompson<br>
United States District Judge